**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Varitalk, Inc., | Case No. 09-16148 |
| (TIN: 26-0660267) | |
| | Hon. A. Benjamin Goldgar |
| Debtor. | Status Hearing: Aug. 5, 2009 |
| | @ 10:00 a.m. |

**VARITALK'S OBJECTION TO MOTION OF
MARK BAKER AND ECLIPS LLC FOR STAY RELIEF**

Varitalk, Inc., as debtor and debtor in possession in the captioned chapter 11 proceeding, respectfully submits the following Objection to the Motion of Mark Baker and Eclips LLC for relief from the automatic stay (Dkt No. 52; the "Stay Relief Motion"). In support of this Objection, Varitalk states as follows,

## I. INTRODUCTION

The Stay Relief Motion should be denied for several reasons. *First,* the Court already has entered a fast track schedule to estimate the alleged claims (the "Baker Claims") of Mark Baker and Eclips, LLC (collectively, "Mr. Baker"), with briefing completed by the end of August and a status conference scheduled for September 9, 2009. Liquidating the Baker Claims in this manner gives proper deference to this Court's exclusive *in rem* jurisdiction over property of the estate. It also eliminates any prejudice to Mr. Baker from not lifting the stay because his prior trial preparation work will not be useless (he can try to use it in the estimation proceeding) and he will have his day in court in the near future.

*Second,* lifting the stay will severely prejudice Varitalk and its other creditors and will elevate Mr. Baker's rights ahead of Varitalk's other creditors. As discussed below, Varitalk will

have to convert this case under Chapter 11 of the Bankruptcy Code into a case under Chapter 7 of the Bankruptcy Code if the California Suit proceeds. Varitalk cannot operate a business in Chapter 11 and at the same defend itself in litigation 2000 miles away that requires the active involvement of key employees undermines its ability to deliver services to high-profile clients and usurps its limited resources. That litigation brought Varitalk to the brink of destruction prior to the Petition Date, and resuming that litigation will push it over the edge.

Finally, the stay should remain in place because Mr. Baker does not have a probability of succeeding on the merits of his claims. As noted previously, the Baker Claims are meritless to the point of being frivolous because, *inter alia,* Mr. Baker (a) elected to wait almost five years to file suit after he knew, or should have known of such claims, (b) failed to establish any damages from the conduct he finds objectionable and failed to propound a damages report from an expert, and (c) commissioned an expert report on patent issues that is so laden with defects as to warrant a vexatious litigation investigation.[1]

## II.     ARGUMENT.

### A.    The Automatic Stay Is A Fundamental Debtor Protection

The automatic stay is one of the most fundamental protections provided to the debtor under the Bankruptcy Code. *Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection*, 474 U.S. 494, 503, 106 S. Ct. 755, 88 L. Ed. 2d 859 (1986), reh'g denied 475 U.S. 1090, 106 S. Ct. 1482, 89 L. Ed. 2d 736. The purpose of the automatic stay is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference

---

[1] *See* Declaration of Fred Lowe at ¶ 3, a copy of which is appended hereto as Exhibit 1 and incorporated herein by reference.

with the orderly liquidation or rehabilitation of the debtor." *St. Croix Condominium Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir. 1982); *Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 508 (7th Cir. 1982).

Section 362(d) provides that the stay may be lifted "for cause." 11 U.S.C. §362(d). A party seeking relief from the stay in order to litigate a claim outside the bankruptcy court has a heavy burden. This is a result of, among other things, the "strong presumption in favor of maintaining venue in the 'home court.'" *In re Grogg*, 295 B.R. 297, 307 (Bankr. C.D. Ill. 2003). *See also In re UNR Indus.*, 54 B.R. 270, 272 (Bankr. N.D. Ill. 1985) ("The proponent of a request for relief from the section 362(a) automatic stay bears the initial burden to establish 'cause' warranting entry of such relief. Once such initial showing has been made by the creditor, the burden lies with debtor to demonstrate its entitlement to the continuation of the stay.").

Under settled precedent, the stay must remain in place with respect to the California Suit, except to the extent Mr. Baker can establish the requisite cause by proving (a) that Varitalk will not suffer great prejudice if the California Suit continues, (b) the hardship to him considerably outweighs the hardship to Varitalk if the stay remains in place, *and* (c) he has a probability of prevailing on the merits of the claims at issue in the California Suit. *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991). A party seeking stay relief must establish each of the above elements. *Id.* Mr. Baker has established *none*.

3

### B.     Lifting The Stay Will Cause Substantial Hardship to Varitalk.

#### 1. Mr. Baker Misleads The Court As To The Nature Of The Relief He Is Seeking In The California Suit.

At the outset, Mr. Baker's attempt to analogize this case to *Fernstrom Storage*[2] is misleading and intellectually disingenuous.[3] The only similarity between this case and *Fernstrom* is that each was pending in a Court that sits at 219 S. Dearborn Street. In fact, *Fernstrom* and other cases[4] teach that the stay must remain in place in this case because, as discussed below, lifting it would be catastrophic to Varitalk's Bankruptcy Estate and its reorganization efforts.

Among other things, lifting the stay would, in all likelihood, put Varitalk out of business. Varitalk is a very small company that is unlikely to be able to survive a trial in California, even if it prevails on the underlying claims.[5] Thus, granting the Stay Relief Motion is likely to be fatal to Varitalk's business operations, its reorganization efforts and its ability to re-pay its creditors.

---

[2] *In re Fernstrom Storage & Van Co.*, 938 F.2d 731 (7th Cir. 1991),
[3] *See* Stay Relief Motion at p. 12 ("In the *Fernstrom* case, the creditor was seeking a declaration of liability in a pending case but had agreed it would only seek a declaration of the rights of the parties. In fact, in that case the creditor was seeking a recovery only from insurance proceeds. Similarly, Baker is seeking a declaration that he is the correct owner and inventor of the Debtor's Patents.") and ("Under *Fernstrom*, '[D]ebtors-defendants suffer little prejudice when they are sued by plaintiffs who seek nothing more than declarations of liability that can serve as a predicate for a recovery against insurers, sureties, or as a predicate against guarantors.'").
[4] *See In re Kmart Corp.*, 2002 U.S. Dist. LEXIS 24141, 4-5 (N.D. Ill. Dec. 10, 2002) (refusing to lift stay to enable ADA litigation to proceed outside bankruptcy court because doing so would "take attention away from the bankruptcy estate's endeavors at this stage in the bankruptcy proceedings"); *In re Comdisco, Inc.*, 271 B.R. 273, 280 (Bankr. N.D. Ill. 2002) ("it would be irresponsible and subversive of the purpose of the automatic stay to allow any resources and attention of the Debtor to be diverted to other matters not directly related to its reorganization").
[5] *See* Declaration of Fred Lowe at ¶ 3, a copy of which is appended hereto as Exhibit 1.

Document      Page 5 of 16

In *Fernstrom*, on the other hand, the stay was lifted precisely because the debtor would not be impacted by the underlying litigation.[6] The Seventh Circuit was careful to note in several instances that lifting the stay would not adversely impact the debtor, which is the principal, if not exclusive, reason it affirmed the lower court decisions. *See Fernstrom*, 938 F.2d at 736 (there would be "no monetary consequences for the debtor" if the stay were lifted) *and* (the creditor's "potential recovery against Fernstrom will not extend beyond the proceeds of Fernstrom's insurance policies") *and* (we are *not* "faced with a situation in which further prosecution of [the] suit will impair Fernstrom's ability to formulate a plan of reorganization or otherwise do Fernstrom 'irreparable harm.'") *and* ("[a]llowing the suit to go forward will not impair Fernstrom's ability to reorganize").

Moreover, the matters at issue in the California Suit, including Mr. Baker's request that he be declared the inventor of Varitalk's property, are core proceedings that not only should be decided, but in fact must be decided, in the Bankruptcy Court pursuant to this Court's exclusive jurisdiction over *in rem* matters.[7] 11 U.S.C. § 541(a), 28 U.S.C. §157(b) and 28 U.S.C. § 1334(e). *See Celotex Corp. v. AIU Ins. Co.,* 152 B.R. 667, 673 (Bankr. M.D. Fla. 1993) ("It must be presumed that any proceeding pertaining to the property of the estate is a core

---

[6]In *Fernstrom, id.*, computer equipment owned by IBM was destroyed by fire while in Fernstrom's warehouse.  IBM's insurance company then paid IBM on account of that claim and took an assignment of IBM's rights against Fernstrom and Fernstrom's insurer.  IBM's insurer and Fernstrom's insurer then slugged it out in court for 6 years in front of Judge Hart, when ultimately Fernstrom advised the court that it had filed for bankruptcy 6 years earlier, thereby putting an abrupt halt to the litigation.  Neither IBM nor its insurer filed a claim for the damaged goods in Fernstrom's bankruptcy.  IBM's insurer then asked the Bankruptcy Court to lift the stay so that it could then pursue Fernstrom's insurer on its subrogation claim.  Fernstrom's insurer, not Fernstrom, was paying the attorneys' fees and other litigation costs.

[7]*See* Stay Relief Motion at 15 ("The personalization technology is the critical component of the Debtor's business and the determination of the ownership of the Patents in the California Action is essential for a reorganization.").

proceeding.").[8] Pursuant to 28 U.S.C. § 1334(e), "it lies within the exclusive province of the bankruptcy courts to determine what interests are part of the estate." *Rare, LLC v. Marciano (In re Rare, LLC)*, 298 B.R. 762, 764 (Bankr. D. Colo. 2003) (citing *Manges v. Atlas (In re Duval County Ranch Co.)*, 167 B.R. 848, 849 (Bankr. S.D. Tex.1994) ("Whenever there is a dispute regarding whether property is property of the bankruptcy estate, exclusive jurisdiction is in the bankruptcy court.")).[9]

### 2. Varitalk Will Suffer Extreme Prejudice Because It Cannot Survive A Trial In California

When Varitalk filed for Chapter 11 relief on May 4, 2009, it had approximately $4000 in its bank account and its receivables pipeline had been severely depleted. That is what happens when key sales and operations staff, including senior management, gets sucked into litigation pending in a courthouse 2000 miles from Chicago. They simply are unable to tend to routine tasks such as selling or servicing clients. They are distracted by the rigors of trying to prepare for trial. *See* Lowe Declaration at ¶ 3.

---

[8]"The uniqueness of property of the estate to bankruptcy cannot be discounted. Because of the primacy of property of the estate in the bankruptcy process, such a presumption should not be surprising." *Celotex*, 152 B.R. at 673 (citing Donald P. Board, Retooling "A Bankruptcy Machine That Would Go of Itself", 72 B.U. L. Rev. 243 (1992)(book review); 1 David G. Epstein et al., Bankruptcy, §§ 2-8 and 3-14 (1992); 4 Collier on Bankruptcy, § 541.01 et seq. (King ed., 15th ed. 1992)).

[9]*See also Castro Fernandez v. Bravo Albuerne (In re Castro Fernandez)*, 2006 Bankr. LEXIS 3881, 4-5 (Bankr. D.P.R. Oct. 11, 2006) ("While we are reluctant to exercise jurisdiction to liquidate common ownership of property governed by applicable non bankruptcy law, the determination of debtor's and her bankruptcy estate interest in property is conferred upon us exclusively by a statute that preempts any determination by a non bankruptcy court."). *See also Landry v. Exxon Pipeline Co. Mendoza Marine, Inc.*, 260 B.R. 769, 781 (Bankr. M.D. La. 2001) ("28 U.S.C. § 1334(e) more properly denotes a grant by Congress of in rem jurisdiction over property of the debtor as of the commencement of the case and over property of the estate."). *See generally In re United States Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. Ill. 1997).

Varitalk also has lost several employees due to the California Suit, including some who have left subsequent to the Petition Date. Varitalk's remaining employees are thus all the more critical to Varitalk's operations and there simply are not enough of them to tend to the demands of a trial in California and, at the same time, operate a business in a Chapter 11 proceeding. Currently, Frederick Lowe is the only remaining employee that can administer Varitalk's core technology (the WavServer). Mr. Lowe also is Varitalk's Chairman and Chief Executive Officer, as well as a defendant in the California Suit. *Id.* at ¶¶ 4-8.

Additionally, if Varitalk is unable to conduct uninterrupted business operations while a trial proceeds in California (which is a certainty), it will not be able to cover its operating expenses during that time and, perhaps even more importantly, it will not be able to deliver services or otherwise meet contractual obligations to existing clients, including some who have a high profile in the entertainment industry. Those clients, whose marketing campaigns are using Varitalk's products, are likely to terminate their agreements with Varitalk, not renew contracts with Varitalk, and potentially file breach of contract claims against Varitalk. *Id.*

At a minimum, Varitalk's ability to generate revenue will be seriously impaired if the stay is lifted, as will Varitalk's going concern value, its goodwill and market presence. The possibility of that happening, by itself, provides more than ample reason to deny the Stay Relief Motion. *Id. See also In re W.R. Grace & Co.*, 2007 Bankr. LEXIS 1214 (Bankr. D. Del. Apr. 13, 2007) ("The most important factor in determining whether to grant relief from the automatic stay to permit litigation to proceed against a debtor in another forum is the effect on such litigation on the administration of the estate. Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit."); *In re Curtis*, 40 B.R. 795, 806

(Bankr. D. Utah 1984) (same); *In re Towner Petroleum Co.*, 48 B.R. 182, 191 (Bankr. W.D. Okla. 1985) (same).

### 3. Mr. Baker Has Unfair Strategic Advantages In The California Court.

Mr. Baker's resistance to a quick and efficient vehicle for liquidating his claims (*i.e.*, the estimation process) <u>strongly underscores</u> the strategic advantages he hopes he can exploit in the California Court -- advantages *that are unrelated to the merits of his claims*. This resistance also <u>strongly underscores</u> the reality that Varitalk and the Bankruptcy Estate will suffer strategic disadvantages if the California Suit continues – *disadvantages unrelated to the merits of Varitalk's defenses*.

Specifically, as a result of its limited finances, Varitalk does not have access to adequate representation in the California Suit, whereas Mr. Baker is ably represented by contingency fee counsel with Krane & Smith. *See* Lowe Declaration at ¶¶ 9-10. Although the Stay Relief Motion asserts that Robert Gray can represent Varitalk in the California Action, Mr. Baker knows that Mr. Gray is *not* capable of single-handedly representing Varitalk in the California Action for a variety of reasons, including that he is not a patent attorney, he is not a member of the California Bar (and local rules require representation by California counsel) and his office is 2000 miles away from the Los Angeles Courthouse.

Also because of its limited finances, Varitalk was unable in the California Suit to hire outside experts to establish that Mr. Baker's "inventorship claims" are frivolous. Varitalk also was unable to depose Mr. Baker's own experts to expose under cross-examination the obvious defects in their reports, including the assertion by Christopher Myers that Varitalk's patents are mere obvious extensions of the '127 Provisional patent application; a provisional application that did not assert any claims and that ultimately was rejected on the grounds that the Personalization

8

Method described therein had already been discovered by many others.[10] The Varitalk "in house" engineers who propounded reports in the California Suit also are no longer employed by Varitalk and, very likely, no longer available to assist because of other commitments.

Thus, if the stay is lifted, Varitalk will not have trial and patent counsel and will not be able to present its own expert testimony or to impeach Mr. Baker's experts with their deposition testimony because discovery has closed. Even if, for the sake of argument, this is not unfair to Varitalk, it is unfair to Varitalk's Bankruptcy Estate and its creditors. That is another reason to deny the Stay Relief Motion.

### C. Any Prejudice To Mr. Baker From Keeping The Stay In Place Pales In Comparison To The Extreme Prejudice Varitalk Will Suffer.

Mr. Baker also will not be prejudiced if the stay remains in place. He will not have to "write off" the expenses he already incurred in preparing his case for trial,[11] because his expert reports and other trial preparation materials can be used in connection with the estimation proceeding or in connection with defending an objection to his claim. Unlike in *Fernstrom,* where IBM's insurer would have to write off the litigation expenses because IBM did not file a proof of claim in the case, in this situation Mr. Baker has filed proof of claim numbers 23-1 and 25-1, and he has not explained why his trial preparation work cannot be used in connection with

---

[10]*See* Declaration of Joseph Mayo at pp. 2-3, a copy of which is appended hereto as Exhibit 2 and incorporated herein by reference.

[11]*See* Stay Relief Motion at p. 14 ("In *Fernstrom*, the Seventh Circuit made the point that the creditor would suffer great prejudice 'by forcing it, in effect, to write off the expenses it incurred while litigating its case against Fernstrom to the eve of trial. Where the stayed nonbankruptcy litigation has reached an advanced stage, courts have shown a willingness to lift the stay to allow the litigation to proceed.'").

9

the prosecution of those claims. *Compare Fernstrom*, 938 F.2d at 733 (""…IBM's failure to file a timely proof of claim against Fernstrom for the amount at issue in the subrogation action…").

And even if he did have to duplicate work product, Mr. Baker has not provided any evidence or argument indicating that he would suffer prejudice from that. There is no basis in the record to know whether Mr. Baker easily can afford to duplicate litigation expenses, or whether doing so would be a tremendous sacrifice. Given that he has the burden of proving hardship, Mr. Baker's failure to provide any evidence at all of the relevant facts, as well as his efforts to block Varitalk from deposing him on such facts, is fatal to the Stay Relief Motion.

### D.      Mr. Baker Will Not Prevail On The Merits.

Finally, the stay should remain in place because Mr. Baker has not established a probability of prevailing on his claims against Varitalk. As noted previously, those claims are meritless (to the point of frivolous).

#### 1.      Mr. Baker's Claims Are Time-Barred

The Baker Claims are meritless, in the first instance, because Mr. Baker waited too long to file suit. As set forth in Varitalk's Motion in Aid of Reorganization, which is attached as Exhibit 3 and incorporated herein by reference,[12] the California Court already determined that the Baker Claims were filed after the applicable limitations period and that they are time barred unless Mr. Baker can exploit the so-called "discovery rule."

But the "discovery rule" does not apply in this case because a reasonably prudent person standing in Mr. Baker's shoes would have swiftly taken steps in October of 2002, to protect his alleged invention or business model, particularly given undisputed facts establishing that Mr.

---

[12] *See Varitalk v. Baker, et al.,* Adv. Pr. No. 09-00383; Dkt. No. 28.

10

Baker himself (a) assigned a value to that method of between $25 and $30 million in 2002 (before the company even started to operate), (b) knew that a patent application had been filed with respect to that invention and that Mr. Lowe's work was included in that application, (c) is an attorney and is married to a practicing attorney, (d) insisted on at least one other occasion that an individual sign a confidentiality agreement that would preclude him from disclosing any trade secrets learned while working with Mr. Baker, and (e) knew that none of the departing proposed Members of Eclips were under any restrictions – and told Mr. Baker they had no restrictions – that related to Mr. Baker.[13]

Furthermore, Mr. Baker had ample and simple means at his disposal to discover his alleged claims (assuming, for the sake of argument, that he did not have actual knowledge of Varitalk in 2002). Among other things, Mr. Baker easily could have (a) asked his long-time friend, Kerry Gordy, about what Mr. Drimmer and Mr. Lowe were doing after they parted company with him, inasmuch as Mr. Gordy was a Member of Varitalk from its inception, (b) asked his long-time friend, Robert Israel (who was running a company called Aspect Ratio), whether he knew anything about the activities of Mr. Drimmer, Mr. Lowe and Mr. Goldberg with respect to personalized media, inasmuch as Aspect Ratio had done business with Varitalk and Mr. Israel actually instructed Aspect Ratio to cease doing business with Varitalk in early 2003 because Mr. Baker was no longer connected with it, (c) performed a quick Internet search to find Varitalk's website, (d) talked to the attorney for Eclips Group at The Hecker Law Group,

---

[13] Under the discovery rule, "[i]f a person becomes aware of facts which would make a reasonably prudent person *suspicious*, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation." *Westwood Assocs. v. Atlantic Richfield Co.*, 20 Cal. App. 4th 732, 740 (Cal. Ct. App. 1994) (Emphasis supplied).

who knew of Varitalk's existence and who maintained communications with Mr. Baker, (e) accessed the website for the Patent & Trademark Office to identify applicable patent applications.

### 2. Mr. Baker Did Not Invent Varitalk's Patents.

Varitalk's patents were issued because Mr. Lowe, Varitalk's Chairman, discovered that media files could be delivered better over the internet if the files were not compressed as much as possible (e.g., Mr. Lowe "degraded" the compression algorithm). [14] Those patents were not issued because they taught the use of compression for personalizing media files and the report prepared by Christopher Myers (Mr. Baker's expert) wholly ignores the finding by the Patent and Trademark Office, that compression of media files for Internet distribution was obvious in light of discoveries by Messrs. Wine, Bodnick, and Marsot.[15] Further, the Myers Report cites information in the patent application that does not exist and totally ignores that new information was added in 2006 – and that the Patent Examiner allowed the Patents exclusively because of that new information. As noted in the Mayo Declaration:

> The Dr. Myers' expert report and Mr. Smegal's conclusion based thereon are both incorrect. Dr. Myers ignores the new matter added by Mr. Lowe in the '696 and '645 patents, fails to recognize that the original claims of the '696 and '645 patents were deemed obvious until the new matter added by Mr. Lowe was claimed and furthermore, Dr. Myers bases his analysis on paraphrased claim

---

[14]The so-called "compression algorithm" is software that makes files smaller by compressing them. Prior to Mr. Lowe's discovery, the state of the art was to make media files as small as possible, under the theory that, while compression reduced audio fidelity, a smaller file was better because it could be transmitted faster over the Internet. Mr. Lowe, on the other hand, came up with the idea that by "intentionally degrading" the "compression algorithm," (i.e., manipulating it to avoid compressing the files as much as possible), he could generate substantially higher quality media while achieving near-parity compression. It was this discovery that led the Patent and Trademark Office to issue Varitalk the '696 Patent.
[15]*See* Declaration of Joseph Mayo at ¶ 28, a copy of which is appended hereto as Exhibit 2.

> language that is not found in the claims. Mr. Smegal's conclusions fail as well as they are based on the erroneous analysis of Dr. Myers.[16]

Given the obvious problems with the Myers Report, Mr. Baker will not be able to carry his burden of overcoming the strong presumption under the Patent Act that Mr. Lowe is the "true and only" inventor of Varitalk's technology and he does not have a probability of succeeding on the merits of his claims. *Winbond Electronics Corp. v. International Trade Comm'n.*, 262 F.3d 1363, 1371 (Fed. Cir. 2001) (The Patent Act provides a presumption of validity to issued patents, including the properly named inventor); *Hess v. Adv. Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997); *see* 35 U.S.C. § 262 ("Presumption of validity").

### 3. Mr. Baker Cannot Connect Any Wrongdoing On The Part Of Varitalk With Any Alleged Damages.

The Baker Claims also are meritless because Mr. Baker cannot connect any allegations of wrongdoing by Varitalk to his alleged damages and, in fact he is estopped from arguing otherwise in light of the statement in his Stay Relief Motion that his alleged "personalization technology, patents and trade secrets …were misappropriated by the individual defendants to their new company, the Debtor, to the exclusion of Baker." (Baker's Motion to Lift Automatic Stay, Dkt. No. 52, p.4) (emphasis supplied). See *Clark v. Robert W. Baird Co.*, 152 F. Supp. 2d 1040, 1045 (N.D. Ill. 2001) ("Factual assertions in pleadings or stipulations by a party or its counsel are judicial admissions, binding on the party making them. … It is within my discretion to consider statements of fact contained in a brief to be judicial admissions, and I do so here.") (internal citations omitted).

---

[16]*Id.* at pp. 2-3 (Summary of Report).

### 4. The Baker Claims Are Meritless Because Mr. Baker Has Never Established Any Damages.

Next, the Baker Claims are meritless because Mr. Baker has no admissible evidence regarding damages and that failure, by itself, provides a basis for finding his claims lacking in all merit. See *e.g., US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 690 (8th Cir. Minn. 2009) (affirming dismissal of suit due to absence of damages proof as to lost profits and affirming district court's refusal to allow plaintiff's owner to provide lay opinion testimony on such matters because it was remote, speculative and conjectural).

### 5. Mr. Baker's Misappropriation Claim Is Meritless.

There also is no basis for finding that Varitalk misappropriated Mr. Baker's trade secrets. Mr. Baker will not prevail on his "trade secrets" claims because, as explained in the Motion to Estimate,[17] which is incorporated herein by reference, there is abundant evidence establishing that he never had information with any value in its secrecy, did not take any measures to protect what he did have, and Varitalk has never used information (or anything else) that Mr. Baker used.

### 6. Mr. Baker Does Not Have An Interest In Varitalk's Patents Based Upon A Work For Hire Theory.

Mr. Baker also has indicated that he has a right to Varitalk's property because Mr. Lowe signed a "work-for-hire" agreement and thus any inventions he created belong either to Mr. Baker or to Eclips, LLC. Once again, Mr. Baker does not have a probability of prevailing on this claim for the reasons set forth in the Motion to Estimate. Furthermore, even if Mr. Baker could prove that such an agreement existed in 2002 (which he cannot), Mr. Lowe's invention that

---

[17]*See* Dkt. No. 70.

garnered patent protection was conceived years after Mr. Lowe, Mr. Drimmer and others severed their ties with Mr. Baker.

### 7. Mr. Baker's Claims Are Barred By Estoppel, Waiver And Laches.

Finally, laches, waiver and estoppels principles also defeat Mr. Baker's claims. Mr. Baker concedes that he learned about his alleged claims against Varitalk in early 2005, but yet he does not offer any legitimate reason for waiting another 2.5 years to file suit (Varitalk believes Mr. Baker knew about Varitalk much earlier). By waiting to file suit, Mr. Baker substantially prejudiced Varitalk and its principals. He should not be rewarded for playing a waiting game that was calculated to do maximum damage to Varitalk and provide him with maximum leverage.

Respectfully Submitted,

Varitalk, Inc.

By: /s/ William J. Factor
One of Its Attorneys

William J. Factor, Esq.
THE LAW OFFICE OF WILLIAM J. FACTOR, LTD.
1363 Shermer Road, Suite 224
Northbrook, IL  60062
Telephone:  (847) 239-7248
Facsimile: (847) 574-8233
Email:  wfactor@wfactorlaw.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this, the 27st day of July, 2009, he personally caused a copy of the attached document to be served upon the following parties in the manner so designated.

s/ William J. Factor

Bank of Hinsdale
c/o David J. Letvin
Letvin & Stein
541 N. Fairbanks Court
Suite 2121
Chicago, IL 60611
fax (312) 527-2818
email davidletvin@aol.com
(Fax, email and ECF)

Cameron Gulden
United States Trustee's Office
219 South Dearborn Street
Chicago, IL 60604
Fax: 312-866-5794
(Fax, email and ECF)

John A. Lipinski
Clark & Trevithick
800 Wilshire Blvd.
12th Floor
Los Angeles, CA 90017
(213) 624-9441
(fax)

Mark Baker, Eclipse, LLC and Eclips Group
c/o David Newby
Johnson & Newby
39 South LaSalle
Suite 820
Chicago, IL 60603
**Fax: 312-345-1308**
dnewby@jnlegal.net
(fax, email and ECF)

Scott N. Schreiber
Stahl Cowen Crowley LLC
55 W. Monroe
Suite 1200
Chicago, IL 60603
312-423-8189
Sschreiber@stahlcowen.com
(fax, email and ECF)

Joel Schechter
53 West Jackson Blvd
Chicago, IL 60603
Fax: (312) 939-4714
Joelschechter@covad.net
(fax, email and ECF)